**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  1:25-cv-10004 |
| | ) | |
| v. | ) | |
| | ) | |
| COOLER SCREENS, INC., | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Cooler Screens, Inc. ("Cooler Screens" or "Defendant") for infringement of United States Patent Nos. 10,360,571 ("the '571 Patent"), 10,977,672 ("the '672 Patent"), and 11,042,890 ("the '890 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.     Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.     Upon information and belief, Defendant Cooler Screens is a company organized and existing under the laws of Delaware, with a principal place of business located at 233 North Michigan Avenue, Suite 1430, Chicago, IL 60601 and may be served with process through its registered agent, Arsen Avakian, 250 E. Pearson St., #1601, Chicago, IL 60611.

## JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.     This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.     Cooler Screens is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Illinois and in the Northern District of Illinois ("District"), including conduct giving rise to this action.

6.     Cooler Screens has conducted and does conduct business within the State of Illinois.

7.     Cooler Screens has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.     This Court has personal jurisdiction over Cooler Screens at least because Cooler Screens has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the District, thus committing acts of infringement within the District.  In addition, Cooler Screens has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Northern District of Illinois. Cooler Screens, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services in this District that infringe the Asserted Patents.

9.     This Court likewise has personal jurisdiction over Cooler Screens at least because Cooler Screens has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Cooler Screens would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over Cooler Screens in this action pursuant to due process and the Illinois Long Arm Statute because the claims asserted herein arise out of or are related to Cooler Screens' voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b), having a principal place of business located within this district at 233 N Michigan Ave Ste 1430 Chicago, IL, 60601-5520 United States.

12.     Cooler Screens offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Illinois and in this District.

13.     Customers of Cooler Screens operate multiple stores in this District, including Cooler Screens' customer Walgreen Co. ("Walgreens") including at 641 N. Clark St., Chicago, IL 60654. This store is a regular and established place of business of Walgreens.  Further, Walgreens has its corporate headquarters and principal place of business located in this District at 108 Wilmot Road Deerfield, IL 60015.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

14.     Alpha Modus Corp. specializes in the development of innovative retail technologies.

15.     At the core of Alpha Modus's technology portfolio, including the Patents-in-Suit, is the capability to analyze consumer behavior and product interaction in real-time. This advanced

capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

16.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Patents-in-Suit.

17.     On January 11, 2024, Alpha Modus entered into a substantial intellectual property licensing agreement with GZ6G Technologies Corp. *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/12/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/. This agreement authorized GZ6G Technologies Corp. to utilize Alpha Modus's patented technology in their operations, with a particular focus on the Stadium and Event Management industry. Alpha Modus has entered into similar intellectual property licensing agreements with Xalles Holdings Inc. and CashXAI Inc. *See* Alpha Modus Announces Intellectual Property License Agreement with GZ6G Technologies Corp., available at https://alphamodus.com/2024/01/11/alpha-modus-announces-intellectual-property-license-agreement-with-gz6g-technologies-corp/ and Alpha Modus Announces Intellectual Property License Agreement with Xalles Holdings and its Subsidiary CashXAI, available at https://alphamodus.com/2024/04/16/alpha-modus-announces-intellectual-property-license-agreement-with-xalles-holdings-and-its-subsidiary-cashxai/.

18.     These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

19.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A

20.     The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

21.     The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

22.     The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

23.     The '571 Patent is valid and enforceable.

24.     The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

25.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

26.     The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.

5



*FIG. 1*



*FIG. 2*

27.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

28.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein

    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein

    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,

    (iii) the one or more information monitoring devices comprise one or more video image devices;

    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,

    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,

    (vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,

(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,

(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

    (i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

    (ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

    (iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at

the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '672 PATENT

29.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,977,672 (the "'672 Patent") titled "Method And System For Real-Time Inventory Management, Marketing, And Advertising In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '672 Patent is attached to this Complaint at Exhibit B.

30.     The '672 Patent issued from U.S. Patent Application No. 16/985,001 filed on August 4, 2020.

31.     The '672 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

32.     The Patent Office issued the '672 Patent on April 13, 2021, after a full and fair examination.

33.     The '672 Patent is valid and enforceable.

34.     The '672 Patent introduces a novel system for real-time inventory management, marketing, and advertising within a retail store setting.

35.     The '672 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of the increasing prevalence of online shopping and the phenomenon of showrooming. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail

36. The inventors of the '672 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

37. The '672 Patent provides several advantages over the prior art, such as real-time inventory management and the ability to generate targeted promotions and advertising based on behavioral analytics. This approach aims to provide more relevant and engaging consumer experiences, thereby influencing purchasing decisions and potentially increasing in-store sales.



*FIG. 1*



*FIG. 2*

38.     The '672 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, display relevant product information and pricing, and generate promotions for customers based on real-time data analysis.

39.     Claim 1 of the '672 Patent reads:

1. A system for real-time inventory management, marketing, and advertising on a first visual display at a first visual display location in a retail store, comprising:
(a) a server comprising:
        (i) one or more server processors, and,
        (ii) a server memory storing computer-executable instructions that, when executed by the one or more server processors, cause the server to:
                (A) identify, via image recognition, an inventory of one or more retail products physically located at the first visual display location in the retail store,
                (B) display, on the first visual display, information about one or more of the one or more retail products physically located at the first visual display location,
                (C) determine, in real-time, current pricing information regarding the one or more retail products physically located at the first visual display location,
                (D) display, on the first visual display, the current pricing information regarding the one or more retail products physically located at the first visual display location,
                (E) receive, using one or more information monitoring devices at the first visual display location, real-time data of a customer, and
                (F) generate a promotion of one or more of the one or more retail products physically located at the first visual display location for the customer based on behavioral analytics.

**THE '890 PATENT**

40.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit C.

10

41.     The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

42.     The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

43.     The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

44.     The '890 Patent is valid and enforceable.

45.     The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

46.     The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

47.     The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.



FIG. 1



FIG. 2

48. The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

49. Claim 1 of the '890 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein
    (i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and

      (iii) the step of gathering information using the one or more information monitoring devices comprises

          (A) gathering object identification information of a product that the person is interested in purchasing, and

          (B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

      (i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

      (ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

      (iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

      (iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

      (v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## **COOLER SCREENS**

50.    Cooler Screens was co-founded by Greg Wasson, former President and CEO of Walgreens, and purports to offer innovative retail technology solutions.

51.    Upon information and belief, Greg Wasson, as former President and CEO of Walgreens, was aware of the patented technology when the inventors of the Patents-in-Suit visited Walgreens during Mr. Wasson's tenure to demonstrate the technology.

52.    Upon information and belief, Greg Wasson, as former President and CEO of Walgreens, was aware of the patented technology after employees from Walgreens during Mr.

Wasson's tenure visited the offices of the inventors of the Patents-in-Suit visited Walgreens to demonstrate the technology.

53.     Upon information and belief, shortly after these meetings, Mr. Wasson founded Cooler Screens.

54.     Walgreens, one of Cooler Screens' customers, is one of the largest pharmacy store chains in the United States.

55.     Walgreens and other customers have implemented Cooler Screens products in their brick-and-mortar stores.

56.     In or around January 2020, Alpha Modus, as the owner of the Patents-in-Suit, engaged with Cooler Screens regarding the potential licensing of its intellectual property.

57.     During these discussions, Alpha Modus informed Cooler Screens about the Patents-in-Suit and their potential applications in retail technology.

58.     Despite being made aware of the Patents-in-Suit, Cooler Screens expressed disinterest in licensing the Patent-in-Suit or exploring further business opportunities with Alpha Modus.

59.     Cooler Screens then began selling digital smart screens.

60.     Cooler Screens' products practice the patented systems and methods of the Patents-in-Suit that were disclosed during the discussions between Alpha Modus and Cooler Screens in 2020.

61.     Cooler Screens has partnered with various retail partners such as Walgreens, Kroger Co. and others to implement the digital smart screens (the "Accused Products").

62.     Cooler Screens has sued Walgreens in Illinois state court for $200 million for breach of contract related to Walgreens's use of the Accused Products in its stores.

63.     Cooler Screens' customers' implementation of these patented technologies has, on information and belief, significantly contributed to their retail efficiency and profitability.

64.     Cooler Screens customer, Walgreens, has also been aware of Alpha Modus and the Patents-in-Suit at least as early as February of 2020, when Alpha Modus sent a notice letter to Walgreens. In July of 2023, Alpha Modus sent another notice letter to Walgreens regarding the Patents-in-Suit. Alpha Modus sent a follow up letter in August 2023.  All of the letters went ignored.  Alpha Modus has also sued Walgreens and the Kroger Co. for their respective implementations of the Accused Products in the United States District Court for the Eastern District of Texas which Cooler Screens is aware of.

65.     The financial gains accrued by Cooler Screens through the use of Alpha Modus's patented technology have been substantial, providing Cooler Screens' customers with competitive advantages in the retail market.

66.     The benefits reaped by Cooler Screens through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

67.     This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by Cooler Screens, which has led to significant commercial gains for Cooler Screens at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '571 PATENT)

68.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69. Cooler Screens has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the digital smart screens of the Accused Products.

70. The Accused Products utilize one or more information monitoring devices, including video image devices, to gather information about persons at a location, specifically in Cooler Screens' customers' retail stores.

71. The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

72. The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in stores.

73. The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

74. Cooler Screens has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

75. The Accused Products satisfy each and every element of the asserted claim of the '571 Patent either literally or under the doctrine of equivalents.

76. Cooler Screens' infringing activities are and have been without authority or license under the '571 Patent.

77. As a direct and proximate result of Cooler Screens' infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

78.     Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens has been aware of the '571 Patent and its infringement thereof due to the business relationship between Walgreens and Cooler Screens and through Alpha Modus's meetings with Cooler Screens in February of 2020. Despite this knowledge, Cooler Screens has continued to make, use, sell, and offer for sale the Accused Products.

79.     Alpha Modus is informed and believes that Cooler Screens knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, Cooler Screens has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

80.     Alpha Modus is informed and believes that Cooler Screens has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

81.     Therefore, Cooler Screens' infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

82.     As such, Cooler Screens has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

## (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

83.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

84. Cooler Screens is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

85. As detailed in above, Alpha Modus engaged with Cooler Screens regarding the potential licensing of the Patents-in-Suit, including the '571 Patent. During these discussions, Alpha Modus informed Cooler Screens about the Patents-in-Suit and their potential applications in retail technology.

86. Cooler Screens has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '571 Patent as disclosed during the discussions between Alpha Modus and Cooler Screens.

87. Cooler Screens' use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. Cooler Screens encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

88. Cooler Screens' knowledge of the '571 Patent, combined with its ongoing use of the Accused Products, demonstrates Cooler Screens' knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent.

89. Cooler Screens' actions and the manner in which the Accused Products are used in its customers' stores, consistent with Cooler Screens' promotions and instructions, demonstrate Cooler Screens' specific intent to induce infringement of the '571 Patent.

90. Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens knew or was willfully blind to the fact that it was inducing others, including its customers

and staff, to infringe by practicing, either themselves or in conjunction with its customers, one or more claims of the '571 Patent.

91.     As a direct and proximate result of Cooler Screens' induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

92.     Alpha Modus is entitled to recover from Cooler Screens compensation in the form of monetary damages suffered as a result of Cooler Screens' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

<u>**COUNT III**</u>

<u>**(DIRECT INFRINGEMENT OF THE '672 PATENT)**</u>

93.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

94.     Cooler Screens has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '672 Patent, including the digital smart screens and associated systems of the Accused Products.

95.     The Accused Products embody a system for real-time inventory management, marketing, and advertising in a retail store setting, as claimed in the '672 Patent.

96.     The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '672 Patent.

97.     The functions include identifying, via image recognition, an inventory of retail products physically located at a display location in the store, displaying information about the products, determining and displaying current pricing information, receiving real-time data of a

customer using one or more information monitoring devices, and generating promotions for the customer based on behavioral analytics.

98.     Cooler Screens has directly infringed the '672 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '672 Patent.

99.     The Accused Products satisfy each and every element of the asserted claim of the '672 Patent either literally or under the doctrine of equivalents.

100.     Cooler Screens' infringing activities are and have been without authority or license under the '672 Patent.

101.     As a direct and proximate result of Cooler Screens' infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

102.     Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens has been aware of the '672 Patent and its infringement thereof due to the business relationship between Walgreens and Cooler Screens and through Alpha Modus's meetings with Cooler Screens in February of 2020. Despite this knowledge, Cooler Screens has continued to make, use, sell, and offer for sale the Accused Products.

103.     Alpha Modus is informed and believes that Cooler Screens knew or was willfully blind to the patented technology of the '672 Patent. Despite this knowledge or willful blindness, Cooler Screens has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

104.     Alpha Modus is informed and believes that Cooler Screens has made no efforts to avoid infringement of the '672 Patent, despite its knowledge and understanding that its products and systems infringe the '672 Patent.

105.    Therefore, Cooler Screens' infringement of the '672 Patent is willful and egregious, warranting an enhancement of damages.

106.    As such, Cooler Screens has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '672 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '672 PATENT)

107.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

108.    Cooler Screens is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '672 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '672 Patent.

109.    As detailed above, Alpha Modus engaged with Cooler Screens regarding the potential licensing of the Patents-in-Suit, including the '672 Patent. During these discussions, Alpha Modus informed Cooler Screens about the Patents-in-Suit and their potential applications in retail technology.

110.    Cooler Screens, through its partnership with customers including Walgreens, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '672 Patent as disclosed during the discussions between Alpha Modus and Cooler Screens.

111. Cooler Screens' use of the Accused Products demonstrates specific intent to induce infringement of the '672 Patent. Cooler Screens encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '672 Patent.

112. Cooler Screens' knowledge of the '672 Patent and its business relationship with Walgreens, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cooler Screens' knowledge and intent that the Accused Products be used in a manner that infringes the '672 Patent.

113. Cooler Screens' actions and the manner in which the Accused Products are used in Cooler Screens' customers' stores, consistent with Cooler Screens' instructions, demonstrate Cooler Screens' specific intent to induce infringement of the '672 Patent.

114. Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Cooler Screens, one or more claims of the '672 Patent.

115. As a direct and proximate result of Cooler Screens' induced infringement of the '672 Patent, Alpha Modus has suffered and will continue to suffer damage.

116. Alpha Modus is entitled to recover from Cooler Screens compensation in the form of monetary damages suffered as a result of Cooler Screens' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '890 PATENT)

117. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

118.    Cooler Screens has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the digital smart screens and associated systems of the Accused Products.

119.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

120.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

121.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

122.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

123.    Cooler Screens has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

124.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

125.    Cooler Screens' infringing activities are and have been without authority or license under the '890 Patent.

126.    As a direct and proximate result of Cooler Screens' infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

127.    Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens has been aware of the '890 Patent and its infringement thereof due to the business relationship between Walgreens and Cooler Screens and through Alpha Modus's meetings with Cooler Screens in February of 2020. Despite this knowledge, Cooler Screens has continued to make, use, sell, and offer for sale the Accused Products.

128.    Alpha Modus is informed and believes that Cooler Screens knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, Walgreens has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

129.    Alpha Modus is informed and believes that Walgreens has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

130.    Therefore, Cooler Screens' infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

131.    As such, Cooler Screens has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

132.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

133.    Cooler Screens is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent , at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

134.    As detailed above, Alpha Modus engaged with Cooler Screens regarding the potential licensing of the Patents-in-Suit, including the '890 Patent. During these discussions, Alpha Modus informed Cooler Screens about the Patents-in-Suit and their potential applications in retail technology.

135.    Cooler Screens, through its partnership with customers including Walgreens, has implemented and utilized the Accused Products in its customers' stores, which practice the patented methods of the '890 Patent as disclosed during the discussions between Alpha Modus and Cooler Screens.

136.    Cooler Screens' use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. Cooler Screens encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

137.    Cooler Screens' knowledge of the '890 Patent and its business relationship with Walgreens, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates Cooler Screens' knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent.

138.    Cooler Screens' actions and the manner in which the Accused Products are used in Cooler Screens' customers' stores, consistent with Cooler Screens' instructions, demonstrate Cooler Screens' specific intent to induce infringement of the '890 Patent.

139.    Alpha Modus is informed and believes, and on that basis alleges, that Cooler Screens knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Cooler Screens, one or more claims of the '890 Patent.

140.    As a direct and proximate result of Cooler Screens' induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

141.    Alpha Modus is entitled to recover from Cooler Screens compensation in the form of monetary damages suffered as a result of Cooler Screens' infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against Cooler Screens as follows:

(A)    An entry of judgment that Cooler Screens has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Cooler Screens has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order pursuant to 35 U.S.C. § 283 permanently enjoining Cooler Screens, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

(D)    An entry of judgment that the Patents-in-Suit are valid and enforceable;

(E)     An order awarding damages sufficient to compensate Alpha Modus for Cooler Screens' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(F)     A determination that Cooler Screens' infringement has been willful, wanton, deliberate, and egregious;

(G)     A determination that the damages against Cooler Screens be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)     A finding that this case against Cooler Screens is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)     An accounting of all infringing sales and revenues of Cooler Screens, together with post judgment interest and prejudgment interest from the first date of infringement of the '672 Patent and the '890 Patent; and

(J)     Such further and other relief as the Court may deem proper and just.

Dated: August 21, 2025                     Respectfully submitted,

                                           /s/ *Christopher E. Hanba*
                                           Christopher E. Hanba
                                           Illinois Bar No. 6298424
                                           chanba@princelobel.com
                                           Joshua G. Jones
                                           Texas Bar No. 24065517
                                           jjones@princelobel.com
                                           Ariana D. Pellegrino
                                           Michigan Bar No. P79104
                                           apellegrino@princelobel.com
                                           Bryan D. Atkinson
                                           Texas Bar No. 24036157

PRINCE LOBEL TYPE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff*
*Alpha Modus, Corp.*